Clarke-Mobile Counties Gas District (hereinafter referred to as "the Gas District") appeals the trial court's partial summary judgment for Prior Energy Corporation (hereinafter referred to as "Prior Energy"). We dismiss the appeal.
On March 24, 1997, in the Clarke Circuit Court, the Gas District sued Prior Energy; Fred O. Roe, Jr.; Michael A. Coulter; G. M. Coulter; M. A. Abernethy; the estate of Robert M. Saunders, deceased; Union Gas Company of Alabama, Inc.; and Technical Specialties, Inc. (hereinafter collectively referred to as "the defendants"). The Gas District sought to recover compensatory and punitive damages on claims of conspiracy, breach of contract, breach of fiduciary duty, fraud, intentional interference with business relationships, and usurpation of corporate opportunities, in relation to its negotiations and transactions with Prior Energy, including sales, swaps, and purchases of natural gas.[1] All of the allegations contained in the Gas District's complaint pertained to Prior Energy and Roe, the president of Prior Energy, with the exception of the allegation of breach of contract, which involved a management contract that the Gas District alleged existed between it and Union Gas Company of Alabama, Inc. On April 17, 1997, Prior Energy sued the Gas District in the Mobile Circuit Court, alleging that a "Firm Gas Sale Contract" (hereinafter referred to as "the contract") existed between it and the Gas District that included subsequent "confirmations" providing for the delivery and purchase of natural gas, which Prior Energy alleged were supplements to the contract.
On April 29, 1997, the Gas District amended its complaint to state that Prior Energy claimed that the contract existed. The Gas District disputed the existence of the contract and sought a judgment from the trial court declaring that "the alleged contract and confirmations . . . be of no force and effect and that there are no contractual relations in existence between [the Gas District] and [Prior Energy]."
On April 30, 1997, Prior Energy filed a motion to dismiss or for a more definite statement, with a supporting brief that had attached as exhibits the contract and three confirmations. On May 12, 1997, Prior Energy filed a motion to dismiss or to strike the Gas District's amendment to its complaint on the grounds that Prior Energy had previously commenced litigation on the contract when it filed its complaint against the Gas District in the Mobile Circuit Court on April 17, 1997. Prior Energy contended that the Gas District's amendment was "asserted solely in an effort to effect a dismissal or transfer of those claims asserted before the Mobile County Circuit Court." Prior Energy attached as an exhibit a copy of the complaint it had filed in the Mobile Circuit Court.
On July 15, 1997, the trial court conducted a hearing on Prior Energy's motions to dismiss, motion for a more definite statement, and motion to strike. On July 30, 1997, the Mobile Circuit Court dismissed Prior Energy's complaint in an order that determined that Prior Energy's complaint was a compulsory counterclaim to the complaint the Gas District had filed in the Clarke Circuit Court. On September 5, 1997, the Clarke Circuit Court entered an order denying Prior Energy's motions to *Page 90 
dismiss and granting in part and denying in part its motion for a more definite statement. The trial court ordered the Gas District to amend its complaint to state certain information, as that information related to its allegations of fraud, with more particularity. On October 3, 1997, the Gas District filed a second amended complaint to comply with the trial court's order.
The Gas District's amended complaint, in pertinent part, alleged that the defendants, including Prior Energy, had "failed to disclose material facts to and/or suppressed material facts" (count four), and had made representations that "were false and [Prior Energy had] made them willfully to induce the [Gas District] to act, or [that] were fraudulently or recklessly represented as true and intended to deceive the [Gas District]" (count five), in regard to the following items:
 "A. Exorbitant profits made for [Prior Energy] and/or ROE through the negotiation for supply of gas and the cost thereof, gas purchases, gas sales and swaps of gas on behalf of [the Gas District], all to the detriment of [the Gas District]; and/or
 "B. Gas purchase and sale schemes entered into with [the Gas District] and others to the detriment of [the Gas District]; and/or
 "C. Gas sales on [the Gas District's] lines for transportation and delivery of gas at a profit to [Prior Energy] and/or ROE; and/or
". . . .
 "F. The cost of gas to [Prior Energy] and/or ROE; and/or
 "G. Exorbitant profits made by [Prior Energy] and/or ROE; and/or
"H. The price of gas to [the Gas District]; and/or
 "I. The sale of gas from [the Gas District] to [Prior Energy] and/or ROE; and/or
 "J. The fixed price of gas that [the Gas District] had to pay to [Prior Energy] and/or ROE for its gas supply; and/or
 "K. Manipulation of the price of gas that [the Gas District] had to pay to [Prior Energy] and/or ROE, to enhance the profits of [Prior Energy] and/or ROE, all to the detriment of [the Gas District]. . . ."
On November 10, 1997, Prior Energy filed an answer and counterclaims. The counterclaims, in part, sought a judgment from the trial court declaring (1) that the contract and confirmations were "valid, existing, and contractual agreements between the parties subject to termination only in accordance with the terms thereof," and (2) that Prior Energy was entitled to payment for the gas it had delivered to the Gas District. The counterclaims also included claims that the Gas District had breached the contract and that Prior Energy was due certain moneys on theories of account, open account, and goods sold and delivered. On December 3, 1997, the Gas District filed a motion to dismiss Prior Energy's counterclaims. On January 27, 1998, the trial court conducted a hearing on the Gas District's motion to dismiss; it denied the motion on March 27, 1998. On July 7, 1998, the Gas District filed an answer to Prior Energy's counterclaims. On March 2, 1999, the Gas District filed a third amendment to its complaint to add ICC Industries, Inc., and Prior Intrastate Corporation as defendants.
On September 29, 1999, Prior Energy filed a motion for a partial summary judgment; the motion contained argument and a narrative summary of undisputed facts and was supported by attached exhibits. On October 10, 2000, the Gas District filed *Page 91 
a statement of undisputed facts and a statement in opposition to Prior Energy's motion for a partial summary judgment with an attached exhibit. On October 18, 2000, Prior Energy filed a response in opposition to the Gas District's statement of undisputed facts. On October 19, 2000, the trial court conducted a hearing on Prior Energy's motion for a partial summary judgment. On January 16, 2001, it entered a summary judgment for Prior Energy on its counterclaims, finding that the Gas District owed Prior Energy $1,225,290.97 under the contract and $574,400.41 in interest. That order further certified the summary judgment as final pursuant to Rule 54(b), Ala.R.Civ.P.
The trial court's January 16, 2001, order dealt with Prior Energy's counterclaims in isolation, failing to consider the fraud claims that had been asserted by the Gas District in its complaint. That order stated, in pertinent part:
"CONTENTIONS OF THE PARTIES
 "18. Prior Energy: [Prior Energy] contends that the natural gas it delivered to [the Gas District] was delivered pursuant to the Contract under written purchase confirmations which incorporated the Contract by reference. [Prior Energy] contends that these confirmations and the invoices that followed documented all material terms of the parties' agreement and satisfied the formal requirements for such sales of goods under the [Uniform Commercial Code (`UCC')]. Ala. Code § 7-2-201 (1975). [Prior Energy] contends that it is due payment for the gas delivered to [the Gas District] at the contract price as contained in the written confirmatory memoranda attached to its motion as collective Exhibit `C-5.' [Prior Energy's] contention is based not only upon the failure of [the Gas District] to object to the confirmatory memoranda which documented the terms of the deliveries to [the Gas District] but also upon the provisions of the [UCC] which dispense with the need for a writing of any kind between merchants with regard to a transaction in goods which have been received and accepted."
 "[The Gas District]: [The Gas District] contends that there is no executed gas sale agreement in effect controlling the delivery of the volumes of gas because a representative of [the Gas District] did not sign the 1994 Contract. Further, [the Gas District] contends that the filing of this lawsuit on March 24, 1997, in objection to the invoices sent by [Prior Energy], satisfied any obligation it had to object to the price terms for the volumes of natural gas delivered by [Prior Energy]. Also, [the Gas District] contends that any obligation it had to object to the written purchase confirmations could not have been performed because it did not receive the written purchase confirmations until late March 1997. [The Gas District] does not dispute that it received 967,944 MMBtu's [million British Thermal Units] of gas for which it has not paid [Prior Energy] but contends that the price for the unpaid volumes of gas should be a `reasonable price' as determined by a trier of fact and not a confirmation or contract price as [Prior Energy] contends."
"CONCLUSIONS OF LAW
 "19. The Court finds that as a matter of law the sale of natural gas is a transaction in goods as defined in Ala. Code § 7-2-105 (1975). The Court further finds that [Prior Energy] and [the Gas District] are and were `merchants' as that term is defined in Ala. Code § 7-2-104(1) (1975). The Court finds that the [UCC] as contained within the Ala. *Page 92 
 Code § 7-2-101, et seq. (1975), provides the substantive law controlling the subject matter of this motion."
 "20. As there is no question about the quality or conformity of the natural gas delivered in this case by [Prior Energy] to [the Gas District] and no question that these goods were delivered by [Prior Energy] and received and accepted by [the Gas District] and not rejected but sold to [the Gas District's] customers through its system, the law requires that [the Gas District] must pay for the natural gas delivered at the contract rate. Ala. Code
§ 7-2-607(1) (1975)."
 "21. Although all of the confirmations at issue in this Motion for Summary Judgment were received by [the Gas District] since [the Gas District] produced copies of same from its files, only one of those confirmations is signed by a representative of [the Gas District]. The only `objection' to these confirmations by [the Gas District] was made by the filing of the current law suit after [the Gas District's] receipt and acceptance of the goods here involved. Further still, Ala. Code § 7-2-201
(1975) and its commentary provide that the performance under a contract for the sale of goods (such as the delivery of conforming goods) is a substitute for any written documentation and that acceptance is a validation of the contract under which the goods have been accepted. Indeed, the official commentary under this code section describes the receipt and acceptance of goods as an `unambiguous overt admission' by the parties that a contract actually exists. The Court finds that a defense based entirely upon questions of formality with regard to the execution of confirmations is not a defense to the failure to pay at the contract rate for goods that had been accepted and resold to others as is the case here."
 "22. The Court finds that although the February 1, 1994, Firm Gas Sale Contract (the `Contract') is not signed by [the Gas District], the parties each executed sufficient written confirmations that specifically reference the Contract on repeated and numerous occasions to evidence their complete assent, ratification and agreement to the terms of the Contract as written. Therefore, the Court finds that the Contract is a legally binding contract between the parties.
 "23. It is undisputed that [the Gas District's] General Manager actually signed and returned one confirmation dated January 23, 1997, which provided for gas deliveries from February 1, 1997, through September 30, 1997. That confirmation stated that the price [the Gas District] agreed to pay was at least $2.46 per MMBtu. [Prior Energy] contends that it is due payment for the gas under the unsigned confirmations at prices which range from $3.94 per MMBtu down to $2.46 per MMBtu. The Court finds there is a dispute of fact as to when these unsigned confirmations were received by [the Gas District] and thus when the time frame to object arose. However, the Court finds that no dispute of fact exists as to the $2.46 per MMBtu contract price since both parties signed that confirmation and it is the lowest price of the confirmations for February, 1997. Accordingly, the Court finds that all unpaid gas delivered by [Prior Energy] to [the Gas District] shall be priced at the contract rate of $2.46 per MMBtu unless [Prior Energy's] unsigned confirmation is at a lesser contract price in which case the Court finds that the lesser contract price shall control for the volume of gas covered by that specific confirmation as set forth in Exhibit `C-5' to [Prior Energy's] motion." *Page 93 
We also note that the general manager referred to in the trial court's order is Michael Coulter, a defendant in this action, as to whom the Gas District has made allegations of fraud as well.
On February 8, 2001, the Gas District filed a motion to alter, amend, or vacate the trial court's judgment, with an attached supporting brief. On August 2, 2001, after conducting a hearing on the Gas District's postjudgment motion, the trial court entered an order that stated, in pertinent part:
 "Presently before the Court is [the Gas District's] `Motion to Alter, Amend, or Vacate Final Judgment' entered in favor of Prior Energy . . . as to its motion for partial *Page 94 
 summary judgment. [The Gas District] maintains that the Court's order should be vacated on several grounds. [The Gas District] maintains that the Court's order allows Prior Energy, whom they claimed committed fraud, etc., to benefit from this fraud to the detriment of [the Gas District]. . . . Additionally, [the Gas District] maintains that Alabama case law prohibits partial summary judgment in this matter because such a holding would lead to inconsistent verdicts and improper certification under Rule 54(b) of the Alabama Rules of Civil Procedure. . . .
". . . .
"ORDER OF ADJUDICATION
 "It should be noted that this Court's order granting partial summary judgment to Prior Energy accomplished exactly that — a partial summary judgment. The fraud and conspiracy claims of [the Gas District] are still ripe for adjudication. The counterclaims maintained by Prior Energy are distinct from [the Gas District's] tort action. This Court is satisfied that the proper method for this matter is to hold, under Section 7-2-601(1), Code of Alabama, 1975, that [the Gas District] must pay for the gas it received, accepted, and purchased under the clear and certain provisions of the [Uniform Commercial Code (`UCC')]. As to the tort theories submitted by [the Gas District], a jury will need to decide these issues. This Court is satisfied that a Rule 54(b) certification is proper in this case as, similar to Pate v. Merchants National Bank of Mobile, 409 So.2d 797
(Ala. 1982), there are two distinct classes of claims: (1) counterclaims governed by the [UCC], and (2) tort claims asserted by [the Gas District]. These two sets of claims are not `so closely intertwined that separate adjudications would pose an unreasonable risk of inconsistent results.' In fact, this case and this Court's ruling presents the very facts that a Rule 54(b) certification was intended to cover. The claims under the UCC are not factually in dispute and the law is clear that a partial summary judgment is appropriate. If a jury finds fault with Prior Energy on various tort claims, there will be ample room for them to assess the appropriate damages at that time."
(Emphasis added.) On August 16, 2001, the Gas District filed a notice of appeal to this Court.
On appeal, the Gas District argues: (1) that the trial court erred in certifying its partial summary judgment for Prior Energy as final under Rule 54(b), Ala.R.Civ.P., because, it says, the issues presented in its claims and in Prior Energy's counterclaims are "so closely intertwined that a separate adjudication would pose not only an unreasonable risk of inconsistent results, but such an improvident result would be inevitable"; and, in what it describes as a "subsidiary" argument, (2) that the trial court erred in entering the partial summary judgment because, it says, there existed genuine issues of material fact.
In relation to its argument that the issues presented in its claims are intertwined with Prior Energy's counterclaims to such an extent that the certification of the summary judgment on the counterclaims as final pursuant to Rule 54(b) will necessarily lead to inconsistent results, the Gas District relies on Gray v. Central Bank of Tuscaloosa, N.A.,519 So.2d 477 (Ala. 1987), and Branch v. SouthTrust Bank of Dothan,N.A., 514 So.2d 1373 (Ala. 1987). Prior Energy argues in rebuttal that the trial court properly relied on Pate v. Merchants National Bank ofMobile, 409 So.2d 797 (Ala. 1982). Prior Energy asserts in its brief to this Court that "[t]he fact that claims arise out of the same set of operative facts does not prevent them from being treated as multiple and subject to separate adjudication," and that its counterclaims alleging violations of the Uniform Commercial Code ("UCC") were separate and distinct from the Gas District's tort claims. It further asserts that the trial court thoroughly considered the possibility of inconsistent results in entering a summary judgment on its counterclaims. In its reply brief, the Gas District states:
 "[The Gas District's] claim for fraud and misconduct arise out of the same transactions as [Prior Energy's] counterclaim for recovery of the contract price of the natural gas, although [the Gas District's] claims cover a much more extensive period of time. Until [the Gas District's] claims are adjudicated, it is impossible to establish any liability or damages on [Prior Energy's] counterclaim[s] against [the Gas District]."
In Pate v. Merchants National Bank of Mobile, supra, Merchants National Bank sued the Pate Foundation and individual guarantors to recover on a promissory note. Merchants National thereafter filed a motion for a summary judgment on its complaint. In an amended answer to Merchant National's complaint, Cornelia Pate, one of the individual guarantors, asserted a counterclaim alleging that Merchants National had wrongfully converted funds in a checking account belonging to her. She alleged that the wrongful conversion had taken place in 1979; the promissory note at issue was executed in 1980. The trial court entered a summary judgment for Merchants National and certified it as final pursuant to Rule 54(b), but reserved ruling on the counterclaim Pate had asserted for wrongful conversion. Pate appealed, arguing that the trial court could not certify its judgment as final pursuant to Rule 54(b) while leaving her counterclaim pending. This Court, in determining that the trial court's judgment was due to be affirmed, stated:
 "[Rule 54(b)] and its comments clearly provide that under the appropriate facts partial summary judgment on fewer than all claims involved can be appropriate. See Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92 (1976). The fact that the claims may have arisen out of the same set of facts does not prevent them from being multiple claims. Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975).
 "In a case where the complaint asked that certain land be sold, the defendants answered and filed a counterclaim seeking an accounting, this Court stated:
 "`This court is of the opinion that in this case the complaint, asking for the sale of the land, and the counterclaim, asking for an accounting, presented "more than one claim for relief," either of which could have been separately enforced. This is precisely the type of situation Rule 54(b) was intended to cover. The fact that the *Page 95 
 claims may have arisen out of the same set of facts does not mean that they are not multiple claims.'
"Cates v. Bush, 293 Ala. 535, 540, 307 So.2d 6 (1975).
 "The claim and counterclaim in the case at bar clearly presented more than one claim for relief. Merchants National's claim under the note constituted one claim and Mrs. Pate's claim for conversion of the funds in her checking account gave rise to another claim. Either of these claims could have been separately enforced. This case too is an example of the type situation Rule 54(b) was intended to cover."
409 So.2d at 799-800.
The facts of Pate clearly represent the type of situation Rule 54(b) was intended to cover. There was little, if any, factual overlap between the claim and the counterclaim asserted in Pate, which bolsters the conclusion that they were separate claims. Merchants National asserted a claim based upon a promissory note executed in 1980, while Pate's counterclaim for wrongful conversion was based upon events alleged to have occurred in 1979. However, Pate does not address the "intertwining-of-claims" concept; it instead relies only upon the settled proposition that multiple claims may arise out of the same set of operative facts, citing and quoting from Cates v. Bush, 293 Ala. 535,307 So.2d 6 (1975). Thus, the trial court's reliance on Pate to determine that the Gas District's claims and Prior Energy's counterclaims were not "so closely intertwined that separate adjudications would pose an unreasonable risk of inconsistent results" was not entirely warranted.
In cases more factually analogous to this one, where the intertwining-of-claims concept was involved, this Court has set aside Rule 54(b) certifications. In Branch v. SouthTrust Bank of Dothan, N.A.,supra, SouthTrust Bank sued A.G. Branch and Clint Owens, alleging they had defaulted on a promissory note. After the trial court entered a default judgment against Owens, Branch filed an answer to SouthTrust's complaint and a cross-claim against Owens, and SouthTrust filed a motion for a summary judgment against Branch. Branch then filed an amended answer that contained a counterclaim alleging that he had relied upon a fraudulent representation of an agent of SouthTrust when he executed the promissory note. SouthTrust thereafter filed an amended motion for a summary judgment on both its claim and Branch's counterclaim. The trial court entered a summary judgment for SouthTrust on its claim, but denied it a summary judgment on Branch's counterclaim. The trial court subsequently certified its partial summary judgment for SouthTrust as final pursuant to Rule 54(b). On appeal, Branch argued that the trial court had abused its discretion in certifying the partial summary judgment as final.
After discussing Pate and how the facts of that case presented the situation that Rule 54(b) was intended to cover, this Court, in setting aside the Rule 54(b) certification and remanding the case, stated:
 "The facts of this case, however, do not present the type situation that Rule 54(b) was intended to cover. The counterclaim asserted by Branch is based upon an alleged fraudulent representation by an agent of SouthTrust upon which Branch claims he relied in executing the promissory note. It therefore appears that the issues in the two claims in this case are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results. We must conclude, therefore, that in the interest of justice, the claims should not be adjudicated separately." *Page 96 
514 So.2d at 1374. Similarly, in this case, the Gas District claims that it became liable under the contract as a result of the fraudulent conduct of the defendants, including Prior Energy.
In Gray v. Central Bank of Tuscaloosa, supra, Central Bank sued, alleging a default on a promissory note. Frank Gray was a defendant by virtue of his being a guarantor of the note. Only a 1983 agreement signed by Gray was the subject of the appeal before this Court. Gray and another defendant filed an answer that asserted the affirmative defense of fraud; the answer also contained a counterclaim by Gray alleging fraudulent misrepresentation and civil conspiracy against Central Bank and a bank officer, as an agent of the bank. Central Bank thereafter filed a motion for a summary judgment on both its complaint and Gray's counterclaim. The trial court entered a summary judgment for the bank on Gray's counterclaim, but left the bank's claim on the promissory note pending. Upon motion of Central Bank, the trial court certified the summary judgment on Gray's counterclaim as final under Rule 54(b). On appeal, this Court, finding that the facts of that case were analogous to those of Branch, supra, determined that Central Bank's claim on the promissory note and Gray's counterclaim alleging fraud should not be adjudicated separately "[b]ecause the issues in these two claims [were] `closely intertwined' and because a separate adjudication would indeed pose an unreasonable risk of inconsistent results." 519 So.2d at 479.
We conclude that the trial court erred in relying on Pate, supra, in certifying as final pursuant to Rule 54(b), its summary judgment on Prior Energy's counterclaims and in determining that the Gas District's claims, including fraud, were not intertwined with Prior Energy's counterclaim. In Branch, supra, and Gray, supra, this Court held that opposing claims of breach of contract (specifically default), and fraud, based upon the same set of facts, should not be separately adjudicated. To allow the Gas District's and Prior Energy's claims to be separately adjudicated in this case would similarly pose an unreasonable chance of inconsistent results and the trial court's Rule 54(b) certification on the summary judgment it entered on Prior Energy's counterclaims is of no effect. The rationale of Branch and Gray is also applicable to this case, inasmuch as the Gas District's liability on the contract could be affected by its claims that Prior Energy obtained that liability fraudulently. Thus, the trial court should not have ruled on Prior Energy's UCC counterclaims in isolation and certified that judgment as final, without considering the Gas District's opposing claims of fraud, which could affect the extent of Prior Energy's liability under the contract.[2]
Because the trial court's Rule 54(b) certification was invalid, this appeal is from a nonfinal judgment. Accordingly, the Gas District's argument that the appeal must be dismissed is correct.[3] Our *Page 97 
determination in this regard makes further consideration of the propriety of the trial court's summary judgment for Prior Energy on its counterclaims unnecessary.
APPEAL DISMISSED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] Because the Gas District and Prior Energy are the sole parties to this appeal, we discuss only the filings pertinent to those parties. As a result of the multiple parties involved and the extensive discovery that has taken place in this case, large periods of time elapsed between many of the pertinent filings.
[2] We also note that the UCC provides that, unless displaced by its particular provisions, principles of fraud and misrepresentation or other invalidating causes supplement its provisions. See § 7-1-103, Ala. Code 1975. It also provides remedies for fraud. See § 7-2-721, Ala. Code 1975.
[3] Even if the Gas District had not raised the intertwining-of-claims issue on appeal, it would nevertheless be our duty to dismiss this appeal. "When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu." Powell v. Republic Nat'l Life Ins. Co., 293 Ala. 101, 102,300 So.2d 359, 360 (1974) (citing Taylor v. Major Fin. Co., 289 Ala. 458,268 So.2d 738 (1972); Tarvin v. Tarvin, 266 Ala. 214, 95 So.2d 397
(1957)).