Rel: April 21, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————

### SC-2022-0522

————————————

**Richard W. Bentley**

**v.**

**James Randall Bentley**

**Appeal from Cullman Circuit Court**
**(CV-19-7)**

————————————

### SC-2022-0526

————————————

**Richard W. Bentley**

**v.**

**Leslie Bentley**

**Appeal from Cullman Circuit Court**
**(CV-20-900058)**

COOK, Justice.

These consolidated appeals arise from a dispute between Richard W. Bentley and his brother, James Randall Bentley ("Randy"), and from a dispute between Richard and his ex-wife, Leslie Bentley.

In case no. CV-19-7, an action concerning the administration of the estate of Richard and Randy's father, Dedrick William Bentley ("the estate action"), Richard, as coexecutor of Dedrick's estate, asserted cross-claims against Randy, as the other coexecutor of the estate. Richard sought, among other things, the return of certain real property previously owned by their parents to Dedrick's estate and sought to eject Randy from that property. Randy filed a motion for a summary judgment on those cross-claims, which was granted by the circuit court. Although the circuit court certified its partial summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., that certification was improper, and therefore Richard's appeal from the partial summary judgment (appeal no. SC-

2

2022-0522) is due to be dismissed.

In case no. CV-20-900058 ("the fraudulent-transfer action"), Leslie sued Richard in the circuit court, seeking to set aside, pursuant to the Alabama Fraudulent Transfer Act ("the AFTA"), § 8-9A-1 et seq., Ala. Code 1975, the allegedly fraudulent transfer of assets that Richard had obtained or inherited from Dedrick's estate to a trust that Richard had created. Leslie filed a motion for a summary judgment, which was granted by the circuit court, and Richard appealed (appeal no. SC-2022-0526). For the reasons stated below, we affirm the circuit court's judgment in that case.

<u>Facts and Procedural History</u>

Richard and Randy are the sons of Dedrick and his wife, Betty Chatham Bentley. On June 22, 1998, Dedrick and Betty executed a warranty deed transferring ownership of the real property on which their residence was located ("the Bentley property") to Randy. Dedrick and Betty retained a life estate in the Bentley property. Richard alleges that Dedrick and Betty deeded the Bentley property to Randy because they were concerned about losing the property if it became necessary for Betty to be admitted to a nursing home but that Betty died without ever being

admitted to a nursing home. According to Richard, Randy had made an agreement with Dedrick to transfer the Bentley property back to Dedrick if Betty predeceased him. Randy denies the allegation that he had agreed to return the Bentley property, and he contends that there is no evidence of a written agreement to that effect.

On February 1, 2017, Dedrick executed a will that contained the following pertinent provision:

"My wife, Betty Chatham Bentley, who is currently deceased, conveyed to our son, James Randall Bentley, our home located at:

"[address and description of the Bentley property]

"My wife and I retained a life estate in the above conveyance which was executed on June 22, 1998 and recorded on June 22, 1998 in the Cullman County Probate Office at Book 469 Page 61. This conveyance was made with the understanding that my son, James Randall Bentley, would convey back to me the said real property in the event his mother, Betty Chatham Bentley, should pass away.

"In the event my son, James Randall Bentley, conveys the above described real property back to me by an unencumbered general warranty deed, then upon my death I devise and bequeath all my property, whether it be personal, real or mixed equally to each of my two (2) sons, James Randal [sic] Bentley and Richard William Bentley.

"In the event my son, James Randall Bentley, refuses or fails to convey the above real property to me as set out above, all of my remaining property, whether it be real, personal or

4

mixed will be devised and bequeathed to my son, Richard William Bentley."

On April 30, 2018, Dedrick executed a power of attorney in favor of Randy. Richard alleges that Randy took advantage of Dedrick's alleged failing mental health to have his own lawyer prepare the power of attorney for Dedrick. Dedrick executed the document in the lawyer's office in the presence of both Randy and Richard. Richard alleges that Randy then used the power of attorney to gain control over Dedrick's bank accounts and to transfer the funds in those accounts to himself.

On May 9, 2018, Randy transferred $130,031.15 from Dedrick's bank account to Randy's account at a different bank. Richard alleges that this transfer was fraudulent, but Randy denies the allegation. Randy points out that the funds were in a "payable on death" account with Randy as Dedrick's beneficiary. He contends that he transferred the funds out of the account in Dedrick's name in an effort to assist Dedrick in qualifying for certain veteran's benefits.

On May 21, 2018, pursuant to the power of attorney, Randy conveyed to Richard a 2003 Corvette automobile owned by Dedrick. The bill of sale reflected that Richard paid nothing for the Corvette and stated that the Corvette was a "gift from D.W. Bentley."

On May 22, 2018, Richard executed a document titled the "Richard W. Bentley Trust of 2018," pursuant to which he purported to transfer the Corvette, as well as any assets he might inherit from Dedrick's estate, into that trust. Richard named a friend, Richard Edward Morgan, Jr., as trustee.

Dedrick died on June 7, 2018. A few days later, Randy filed in the Cullman Probate Court a petition to probate a will purportedly executed by Dedrick on September 9, 1994. On October 1, 2018, Richard objected to Randy's petition and submitted to the probate court the will that Dedrick had executed in 2017. He later petitioned the court to probate that will.

On March 15, 2019, the probate court entered an order admitting Dedrick's 2017 will for probate and appointing both Randy and Richard as coexecutors of Dedrick's estate over Randy's objection. Shortly thereafter, Randy and Richard each filed a petition to remove the estate proceedings to the Cullman Circuit Court; that court granted those petitions.

On August 17, 2019, Richard filed a cross-claim against Randy in the estate action. He later amended that cross-claim and alleged, among

others, claims seeking to have the Bentley property placed into a "constructive trust" or a "resulting trust" for the benefit of Dedrick's estate and seeking to eject Randy from the Bentley property.

Leslie and Richard were divorced in 1995. Thereafter, Leslie commenced an action against Richard for past-due child support ("the child-support action") and, in 1998, 1999, and 2004, obtained several judgments against him for past-due child support. On August 29, 2018, three months after Richard established his trust and purported to transfer assets into it, the trial court in that action entered a judgment against Richard for $78,802.99, which included the total amount of child support he owed as well as attorney fees.

When Richard failed to make any payments toward the judgment entered in the child-support action, Leslie had a writ of garnishment issued against Dedrick's estate. Leslie stated that she had learned about Richard's trust after receiving a copy of the trust document from Randy in response to the writ of garnishment. As a result, on February 27, 2020, Leslie commenced the fraudulent-transfer action against Richard and Morgan, the trustee of Richard's trust, in which she sought to set aside what she alleged was the fraudulent transfer of assets from Dedrick's

7

estate to Richard's trust by Richard in violation of the provisions of the AFTA.

On April 24, 2020, Leslie moved to consolidate the fraudulent-transfer action with the estate action. The circuit court granted Leslie's motion and entered an order consolidating the two actions.

Six months later, Randy filed a motion for a judgment on the pleadings or, in the alternative, for a summary judgment as to Richard's cross-claims in the estate action seeking to have the Bentley property placed into a "constructive trust" or a "resulting trust" and seeking to eject Randy from the Bentley property. In his motion, Randy argued that he owned the Bentley property, that Dedrick had lived on the Bentley property pursuant to his life estate until his death, that he and Dedrick had both performed their obligations under the warranty deed transferring title of the Bentley property to Randy, and that Dedrick's will anticipated that Randy would keep all of his interest in the Bentley property.

A couple of months after Randy filed his summary-judgment motion, Leslie filed her own summary-judgment motion in the fraudulent-transfer action, in which she argued that Richard had

maintained possession of the Corvette that was supposedly transferred to Richard's trust, that Richard had concealed the purported transfer of the Corvette to the trust, that Leslie had commenced the child-support action against Richard before he had purported to transfer the Corvette to the trust, and that the Corvette composed substantially all of Richard's assets. She further argued that the purported transfer had occurred shortly before she had obtained a substantial judgment against Richard in the child-support action, that the purported transfer was made without Richard's receiving a reasonably equivalent value in exchange for the transfer, and that Richard was insolvent at the time of, or as a result of, the purported transfer. Leslie therefore contended that she was entitled to relief under the AFTA.

The circuit court held a hearing on both summary-judgment motions on December 7, 2021. That same day, the circuit court entered a partial summary judgment in favor of Randy on Richard's cross-claims seeking to have the Bentley property placed into a "constructive trust" or a "resulting trust" for the benefit of Dedrick's estate and seeking to eject Randy from the Bentley property. At Randy's request, the circuit court certified its partial summary judgment as final pursuant to Rule 54(b),

9

Ala. R. Civ. P.

On December 29, 2021, the circuit court entered a summary judgment in favor of Leslie and established a lien upon the Corvette and any further distributions to Richard's trust, to the extent of Leslie's outstanding judgment against him in the child-support action. The circuit court found that the purported transfers by Richard to the trust were fraudulent transfers and void to the extent of Leslie's outstanding judgment. The circuit court further authorized Leslie to levy execution on the Corvette and any other asset acquired by Richard's trust.

Richard filed a postjudgment motion as to both judgments, which was denied by operation of law. In appeal no. SC-2022-0522, Richard challenges the circuit court's partial summary judgment in favor of Randy in the estate action. In appeal no. SC-2022-0526, Richard challenges the circuit court's summary judgment in favor of Leslie in the fraudulent-transfer action. This Court consolidated the appeals.

## Standards of Review

In Scrushy v. Tucker, 955 So. 2d 988 (Ala. 2006), this Court articulated the following standard of review applicable to an order entered pursuant to Rule 54(b), Ala. R. Civ. P.:

10

"Whether the action involves separate claims and whether there is a final decision as to at least one of the claims are questions of law to which we will apply a de novo standard of review. Whether there was 'no just reason for delay' is an inquiry committed to the sound discretion of the trial court, and, as to that issue, we must determine whether the trial court exceeded its discretion."

955 So. 2d at 996.

Additionally,

"'"[t]his Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."'"

Gooden v. City of Talladega, 966 So. 2d 232, 235 (Ala. 2007) (quoting

Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006), quoting in turn Dow v.

11

Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004)).

"Questions of law are reviewed de novo." Pritchett v. ICN Med. Alliance,

Inc., 938 So. 2d 933, 935 (Ala. 2006).

## Analysis

### Appeal No. SC-2022-0522 --
### Partial Summary Judgment in Favor of Randy

First, as best we can discern, Randy argues that the circuit court

lacked subject-matter jurisdiction over the cross-claims because Richard

asserted those claims "on behalf of the estate" without Randy's

agreement as his coexecutor. Because this Court is "'duty bound to notice

ex mero motu the absence of subject-matter jurisdiction,'" we must first

address this issue before discussing the merits of Richard's arguments on

appeal. Baldwin Cnty. v. Bay Minette, 854 So. 2d 42, 45 (Ala. 2003)

(quoting Stamps v. Jefferson Cnty. Bd. of Educ., 642 So. 2d 941, 945 n.2

(Ala. 1994)).

Relying on Stone v. Jones, 530 So. 2d 232 (Ala. 1988), Randy

contends that Alabama law requires that all coexecutors must join in a

lawsuit brought on behalf of an estate. Randy's reliance on Stone is

misplaced.

In Stone, the plaintiff, one of two coexecutors of her mother's estate,

asserted a claim against the estate of the trustee who had administered a trust established for the benefit of the plaintiff's mother, in an effort to obtain benefits to which her mother's estate was allegedly entitled. The other coexecutor refused to join in the claim. This Court held that, in cases in which the use of discretion is required in making decisions that are not within the normal process of administering a decedent's estate, coexecutors must act unanimously in making those decisions. The Court further held that an executor's decision to file a lawsuit is discretionary in nature. 530 So. 3d at 235. See also Douglass v. Jones, 628 So. 2d 940, 941 (Ala. Civ. App. 1993) (recognizing that lawsuits on behalf of an estate must be brought unanimously by coexecutors).

In this case, Richard asserted his cross-claims against his coexecutor -- Randy. This Court has not questioned the trial court's subject-matter jurisdiction in previous cases in which coexecutors have sued each other. See, generally, Cox v. Parrish, 292 So. 3d 312 (Ala. 2019) (coexecutors' ability to sue one another did not impact the trial court's subject-matter jurisdiction); and Kershaw v. Kershaw, 848 So. 2d 942 (Ala. 2002) (same). Based on the foregoing, there is nothing that would

cause us to believe that the circuit court lacked subject-matter jurisdiction or that we lack appellate jurisdiction in this case.

Having established that we have jurisdiction over this appeal, we now turn to Richard's contention that the circuit court's certification of its partial summary judgment in favor of Randy as final pursuant to Rule 54(b) was improper.

Rule 54(b) provides, in part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

This Court has discussed what it considers when reviewing a judgment adjudicating fewer than all the claims in a case that has been certified as final under Rule 54(b):

"'If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will <u>generally</u> lie from that judgment.' <u>Baugus v. City of Florence</u>, 968 So. 2d 529, 531 (Ala. 2007) (emphasis added). However, this Court will not consider an appeal from a judgment certified as final under Rule 54(b) if it determines that the trial court exceeded its discretion in concluding that there is 'no just reason for delay.' Rule 54(b) ….

"A trial court exceeds its discretion in determining that

14

there is 'no just reason for delay' when … 'the issues in the claim being certified and a claim that will remain pending in the trial court "'are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.'"' Schlarb v. Lee, 955 So. 2d 418, 419-20 (Ala. 2006) (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So. 2d 88, 95 (Ala. 2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So. 2d 1373, 1374 (Ala. 1987))."

Loachapoka Water Auth., Inc. v. Water Works Bd. of Auburn, 74 So. 3d 419, 422-23 (Ala. 2011). See also Kirkley v. Phillips, 197 So. 3d 464, 472-73 (Ala. 2015).

It is difficult to conceive of issues that are more closely intertwined than those related to the administration of a decedent's estate. Here, the circuit court certified as final its partial summary judgment as to two of six cross-claims asserted by Richard against Randy. Randy argues that the circuit court properly determined that there was no just reason for delaying the certification of the judgment resolving those two cross-claims as final because they dealt only with the Bentley property, which he maintains he has owned since Dedrick and Betty deeded it to him in 1998. We disagree.

We have only to look at Dedrick's 2017 will to conclude that the disposition of the Bentley property is intertwined with the other

15

provisions of the will. The disposition of the remainder of Dedrick's estate hinges on whether Randy returned the Bentley property to Dedrick, and the various disputes between the brothers inform each issue raised in Richard's cross-claims. Under these circumstances, we conclude that Richard's cross-claims relating to the Bentley property should not be adjudicated separately from his other cross-claims.

Because the issues presented by Richard's cross-claims in this case are so closely intertwined, we conclude that the circuit court exceeded its discretion in certifying its partial summary judgment in favor of Randy as final pursuant to Rule 54(b). Further, because a "nonfinal judgment will not support an appeal," Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 363 (Ala. 2004), we must dismiss this appeal. We, therefore, pretermit discussion of Richard's remaining claims on appeal.

<u>Appeal No. SC-2022-0526 --</u>
<u>Summary Judgment in Favor of Leslie</u>[1]

---

[1]Because the circuit court's ruling on Leslie's summary-judgment motion effectively disposed of all of her claims against Richard and Morgan, the trustee of Richard's trust, we can consider her appeal. See, e.g., Hamilton v. Guardian Tax AL, LLC, 342 So. 3d 172 (Ala. 2021) (recognizing that an appeal is generally final when all claims or the rights or liabilities of all of the parties have been decided).

In appeal no. SC-2022-0526, Leslie contends that Richard violated the provisions of the AFTA[2] when he purported to transfer assets from Dedrick's estate to his trust without first disclosing the transfer to her. According to Leslie, because Richard had no creditors other than her, it is clear that he made the purported transfer to avoid his obligation to her under the judgment entered in the child-support action.

Section 8-9A-4, Ala. Code 1975, which is part of the AFTA, applies to transfers made to avoid obligations to present and future creditors; § 8-9A-5, Ala. Code 1975, applies only to transfers made to avoid obligations to present creditors. At the time the purported transfer was made, Leslie was a present creditor; both sections are therefore applicable here.

Section 8-9A-4 provides:

> "(a) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> "(b) In determining actual intent under subsection (a),

---

[2]We note briefly that the current law applicable to fraudulent transactions is the Uniform Voidable Transactions Act ("the UVTA"), § 8-9B-1 et seq., Ala. Code 1975, which became effective on January 1, 2019. Because Richard's trust was created on May 22, 2018, however, the UVTA does not apply in this case. See § 8-9B-16, Ala. Code 1975.

consideration may be given, among other factors, to whether:

"(1) The transfer was to an insider;

"(2) The debtor retained possession or control of the property transferred after the transfer;

"(3) The transfer was disclosed or concealed;

"(4) Before the transfer was made the debtor had been sued or threatened with suit;

"(5) The transfer was of substantially all the debtor's assets;

"(6) The debtor absconded;

"(7) The debtor removed or concealed assets;

"(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

"(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

"(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

"(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"(c) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:

"(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

"(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

(Emphasis added.)

Section 8-9A-5 provides:

"(a) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

"(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."

Before determining whether Richard's purported transfer of the assets violated the above provisions, we first address whether Richard's actions constituted a "transfer" as that term is used in the AFTA.

Section 8-9A-1(13), Ala. Code 1975, defines a "transfer" as follows: "Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an

19

asset, and includes payment of money, release, lease, and the creation of a lien or other encumbrance." Richard's trust document states:

> "[Richard] hereby transfers, conveys and delivers to [Morgan] the property and rights described below, the receipt of which property is acknowledged by [Morgan], which property and rights, together with any other property that may later become subject to this trust, shall constitute the trust estate, and shall be held, administered and distributed by [Morgan] as provided herein:
>
> > "1) A 2003 Corvette ….
> >
> > "2) Any and all assets of any nature obtained as a result of the settlement of the Estate of Dedrick William Bentley, [Richard's] father."

Based on the foregoing, it is evident to this Court that the terms of Richard's trust called for a "transfer" of assets and property within the provisions of the AFTA.

However, Richard argues that Leslie did not prove that he had the "actual intent to hinder, delay, or defraud any creditor" required by § 8-9A-4(a) of the AFTA when he created the trust or that he transferred any asset to the trust, despite the clear terms of the trust document quoted above. Accordingly, Richard maintains, Leslie was not entitled to a summary judgment.

We note, however, as did Leslie, that the record contains a plethora

of evidence indicating that Richard had an actual intent to "hinder, delay, or defraud" Leslie, as provided in § 8-9A-4 of the AFTA. First, the record indicates that Richard never transferred the 2003 Corvette to the trust or the trustee, notwithstanding that the trust document itself acknowledges the trust's receipt of the Corvette. Additionally, Morgan admitted in his deposition that Richard has had possession of the Corvette since the trust was created. We note, too, that Richard testified in his deposition that he still has physical possession of the Corvette and pays for its insurance, tags, and maintenance. Richard concealed the trust document from Leslie. At the time Richard executed the trust document, Leslie had already commenced the child-support action, Richard had been served and had answered in that action, and the action was still pending.

The record further indicates that, at the time Richard created the trust, he had no money. Additionally, the record also indicates that, when Richard purportedly transferred his assets to the trust, he had not been employed since "like '90 something," he had no bank account, and he owned nothing but a guitar, the Corvette, and an old van. Finally, when Richard was asked at a deposition about the purpose of the trust, he

21

answered: "I'm really hiding a lot man. This is a hider."

Based on the foregoing, we conclude that no genuine issue of material fact existed as to whether Richard had the actual intent to hide his assets from Leslie when he created his trust and purported to transfer assets to the trust as prohibited by §§ 8-9A-4 and 8-9A-5 of the AFTA. Therefore, the circuit court properly entered a summary judgment in Leslie's favor, and that judgment is due to be affirmed.

## Conclusion

Because the circuit court's Rule 54(b) certification of the partial summary judgment in favor of Randy in the estate action was improper, we dismiss appeal no. SC-2022-0522. In appeal no. SC-2022-0526, we affirm the circuit court's summary judgment in favor of Leslie in the fraudulent-transfer action.

SC-2022-0522 -- APPEAL DISMISSED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.

SC-2022-0526 -- AFFIRMED.

Parker, C.J., and Wise and Stewart, JJ., concur.

Sellers, J., concurs in the result, without opinion.