Rel: April 17, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0564
_____

### Shirley R. Hulsey

### v.

### Build Art, LLC

### Appeal from Tuscaloosa Circuit Court
### (CV-20-900281)

MENDHEIM, Justice.

Shirley R. Hulsey appeals from a summary judgment entered by

the Tuscaloosa Circuit Court in favor of Build Art, LLC ("Build Art"), in

her tort action against Yellow Hammer Capital Management, LLC ("Yellow Hammer"), Build Art, and fictitiously named defendants.

In December 2011, Hulsey and her husband purchased their residence in Tuscaloosa as joint tenants with the right of survivorship. In August 2017, Yellow Hammer purchased the lot adjacent to Hulsey's residence ("lot 22"). Lot 22 was at a higher elevation than and sloped toward Hulsey's lot. Also, Hulsey's lot had a retaining wall along much of its length, near or on the common boundary with lot 22. Between the retaining wall and Hulsey's residence was a side yard that was several feet wide.

According to an affidavit from Marcus Minges, the managing member of Build Art, Yellow Hammer retained Build Art to construct a residence on lot 22. Build Art is owned by Yellow Hammer and Minges. In November 2017, Build Art applied for a building permit, which it received. In approximately January 2018, Build Art began construction on the residence with the assistance of a number of subcontractors. According to Minges, "[t]here was no need for excavating and/or grade work on Lot 22 because the lot was build ready when Build Art began work." Minges also averred that "Build Art's employees did not perform

excavations or grading on the project. Build Art did not supply excavating equipment for use by any of its subcontractors. Build Art did not exercise control over the manner in which any excavation, grading, or landscaping of Lot 22 was performed." However, in Build Art's interrogatory answers that Hulsey filed in opposition to its motion for a summary judgment, it responded as follows:

> "7. Please identify the persons or entities who designed, reconfigured, constructed excavated, cut, filled and performed work to Lot 22 Neptune's Cove at NorthRiver Phase One.

> "ANSWER: [Build Art] object[s] to this Interrogatory as being vague. Without waiving this objection, Marcus Minges."

Construction on the lot-22 residence was completed, and a certificate of occupancy was issued in August 2019.

A preconstruction picture of lot 22 reflects a slight downward slope in the side yard from Hulsey's residence to near the bottom of the retaining wall. According to Hulsey's deposition testimony, she had never seen any water coming off of lot 22 onto her lot before construction began on lot 22. Hulsey stated that lot 22 originally was not flat but was "a turtle back … where the water would flow back to the front. … So when they went in there to make that land level enough to do a

3

foundation, it took that drainage away." She stated that she first noticed water coming onto her lot from lot 22 in April 2018, "when the [silt fence] screen … overloaded with mud and caused it to breach, and that's when it dumped in my yard." Hulsey stated that when the silt fence collapsed, "it dumped close to four inches of dirt in my backyard that flowed almost all the way through my backyard," filling up the sloped area that drained the side yard between the lots and her back yard and "creating a dam" that restricted the water flow from her property. She stated that, after the silt fence failed, she brought the issue to "the contractor's attention," but he did nothing about it. Hulsey stated that, after lot 22 was graded and construction was completed, the silt fence was removed and water continued to flow onto her property thereafter. Postconstruction pictures of the side yard at issue reflect that the slope from the retaining wall was toward, rather than away from, Hulsey's residence.

John Stevens, a civil engineer who had been retained by Hulsey, testified in his deposition that he had experience on hydrology issues and the "flow of water from rain." He stated that he had designed stormwater systems and also had provided structural reports to various clients. He stated that he did not consider himself an expert in the field of hydrology,

but considered himself a "semi-expert," which he defined as meaning that he did not take jobs that he did not understand. When asked about jobs that he had taken on in the last 10 years regarding the flow of water, Stevens stated that some were for businesses, "but most of them [were] homes that they can't stop water from getting in" and "[t]here's damage because of the water getting into the homes -- ... -- either slabs or crawl space."

According to Stevens, the foundation of Hulsey's residence was failing, the house was sinking, and he had recommended that helical piers be used to shore up the side of the house nearest to lot 22. He also had recommended that pressure grouting be used to support any hollow area under the slab. Stevens testified that cracks on the side of Hulsey's residence were "the type of cracks you see when the footing is moving." According to Stevens, he did not think that there was any possible cause for the cracks other than the soil being saturated under the slab.

In March 2020, Hulsey filed a complaint against Yellow Hammer, Build Art, and numerous fictitiously named defendants, including those persons "whose names [were] not yet known and who [had] performed

5

services on all or part of Lot 22, or adjacent to Lot 22."[1]  Hulsey alleged

that Yellow Hammer, Build Art, and the fictitiously named defendants

had caused her and her residence to suffer damage based, in part, on the

defendants having

> "knowingly, intentionally, recklessly, wantonly and/or negligently effected demolition, clearing, grading, development and construction as part of their efforts to develop and sell a new house on Lot 22.  The erection of the house on Lot 22 (such work includes, but is not limited to[,] design, demolition, construction clearing, grading, repair, and the maintenance associated therewith) was done in such a manner that such activity has caused the wrongful flooding of surface waters, silt and debris onto the Hulsey Property via surface water run-off."

Hulsey alleged against "all the defendants" claims of trespass, nuisance,

wrongful infliction of mental anguish and emotional distress, negligence,

wantonness, and a violation of her common-law right regarding the

natural flow of surface water as discussed in <u>Sargent v. Lambert</u>

<u>Construction Co.</u>, 378 So. 2d 1153, 1155 (Ala. Civ. App. 1979).  In addition

to requesting compensatory and punitive damages, Hulsey also

---

[1]Hulsey's husband also was a plaintiff.  However, he died on December 15, 2021.  Pursuant to Rule 24, Ala. R. Civ. P., Build Art filed a suggestion of death regarding Hulsey's husband.  After no substitution was made for him, Build Art filed a motion to dismiss his claims, which the circuit court granted.

requested permanent injunctive relief regarding the allegedly altered water flow from lot 22 onto her lot.

Build Art filed an answer denying Hulsey's allegations and alleging numerous affirmative defenses. Yellow Hammer filed a motion to dismiss, which also included a statement denying Hulsey's allegations. A hearing was set to be held on June 29, 2020, on the motion to dismiss. On June 30, 2020, the circuit court entered an order that stated that Yellow Hammer's motion to dismiss was moot.

In March 2025, Build Art filed a motion for a summary judgment, along with supporting evidence, including an affidavit from Minges and deposition testimony from Hulsey and Stevens. Hulsey filed a response to Build Art's motion for a summary judgment. She argued that summary judgment would be improper because, she said, material issues of fact were in dispute. According to Hulsey, she had never experienced water runoff from lot 22 before the construction on that lot, and, she said, the evidence would support the conclusion that Build Art had interfered with the natural drainage of water, causing damage to her property.

After conducting a hearing on Build Art's motion for a summary judgment, the circuit court entered an order on May 13, 2025, granting

Build Art's summary-judgment motion as to all the claims against it. The May 2025 order stated that "[a]ll other claims remain pending." Hulsey filed a motion to reconsider, which the circuit court denied. On July 1, 2025, the circuit court entered an order certifying the May 2025 order as final pursuant to Rule 54(b), Ala. R. Civ. P. On July 31, 2025, Hulsey filed a notice of appeal to this court.

Hulsey argues that the circuit court erred by entering a summary judgment in favor of Build Art because, she says, there were genuine issues of material fact that must be resolved by a jury. Hulsey also references the issue whether the May 2025 order, as certified by the July 2025 order, is a final judgment that will support an appeal. Build Art has not replied regarding the latter issue, and we agree with Hulsey's finality concern.

The circuit court adjudicated only the claims against Build Art, which performed the work on lot 22 for Yellow Hammer, against whom the same claims remain pending. Rule 54(b) provides, in pertinent part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express

8

determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Nevertheless, "'[t]he trial court cannot confer appellate jurisdiction upon this [C]ourt through directing entry of judgment under Rule 54(b) if the judgment is not otherwise "final."'" Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 362 (Ala. 2004) (quoting Robinson v. Computer Servicenters, Inc., 360 So. 2d 299, 302 (Ala.1978)). And this Court must dismiss an appeal when we determine that the order appealed from is not a final judgment, even when a trial court has entered a Rule 54(b) certification. See Hammock v. Wal-Mart Stores, Inc., 8 So. 3d 939, 941 (Ala. 2008); see also, e.g., Harlan Home Builders, Inc. v. Hayslip, 58 So. 3d 102, 108 n.3 (Ala. 2010) ("[T]he summary judgment entered by the trial court was not a final judgment that was properly appealable to this Court at the time it was entered or at the time it was purportedly certified as final by the trial court; therefore, this Court acquired no jurisdiction over the purported appeal of that judgment.").

> "This Court looks with some disfavor upon certifications under Rule 54(b).
>
> > "'It bears repeating, here, that "'[c]ertifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.'" State v. Lawhorn, 830 So.

9

2d 720, 725 (Ala. 2002) (quoting <u>Baker v. Bennett</u>, 644 So. 2d 901, 903 (Ala. 1994), citing in turn <u>Branch v. SouthTrust Bank of Dothan, N.A.</u>, 514 So. 2d 1373 (Ala. 1987)). "'"Appellate <u>review in a piecemeal fashion is not favored</u>."'" <u>Goldome Credit Corp. [v. Player</u>, 869 So. 2d 1146, 1148 (Ala. Civ. App. 2003)] (quoting <u>Harper Sales Co. v. Brown, Stagner, Richardson, Inc.</u>, 742 So. 2d 190, 192 (Ala. Civ. App.1999), quoting in turn <u>Brown v. Whitaker Contracting Corp.</u>, 681 So. 2d 226, 229 (Ala. Civ. App. 1996)) (emphasis added).'

"<u>Dzwonkowski v. Sonitrol of Mobile, Inc.</u>, 892 So. 2d 354, 363 (Ala. 2004). Also, a Rule 54(b) certification should not be entered if the issues in the claim being certified and a claim that will remain pending in the trial court '"are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results."' <u>Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp.</u>, 834 So. 2d 88, 95 (Ala. 2002) (quoting <u>Branch v. SouthTrust Bank of Dothan, N.A.</u>, 514 So. 2d 1373, 1374 (Ala. 1987))."

<u>Schlarb v. Lee</u>, 955 So. 2d 418, 419-20 (Ala. 2006). See also, e.g., <u>Scott v. Advanced Pharm. Consultants, Inc.</u>, 84 F.4th 952, 962 (11th Cir. 2023) (concluding that certification of finality was not proper when the summary judgment adjudicated all counts against one defendant but left the identical counts against the other defendant unadjudicated and that adjudicating the same counts separately would be duplicative, waste substantial judicial resources, and run the risk of inconsistent rulings in different appeals).

Based on the relationship between Yellow Hammer and Build Art and the nature of the alleged claims, which arise from the same operative facts, we conclude that the claims against Build Art and Yellow Hammer are intertwined and should not be adjudicated separately, which would be duplicative, waste judicial resources, and risk inconsistent rulings in the circuit court and in any subsequent appeal. Thus, the circuit court exceeded its discretion in certifying the partial summary judgment as final.

"'A nonfinal judgment will not support an appeal.'" Schlarb, 955 So. 2d 420 (quoting Dzwonkowski, 892 So. 2d at 363). Accordingly, this appeal is dismissed.

APPEAL DISMISSED.

Stewart, C.J., and Shaw, Bryan, and McCool, JJ., concur.